UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| MAGPUL INDUSTRIES CORP., <br><br> Plaintiff, <br><br> v. <br><br> TONG ZEJUN, *et al.*, <br><br> Defendants. | Case No. 14-cv-01556-JSW   (NJV) <br><br> **REPORT AND RECOMMENDATION ON PLAINITFF'S MOTION FOR DEFAULT JUDGMENT** <br><br> Re: Dkt. No. 63 |

## INTRODUCTION

Before the court is Plaintiff Magpul Industries Corporation's ("Magpul") Motion for Entry of Default Judgment pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure. Doc. 63. Magpul seeks the entry of default against Defendant Tong Zejun ("Tong") in the amount of one hundred twenty thousand dollars ($120,000.00) and the entry of a Permanent Injunction that forever enjoins Tong from unlawfully using Magpul's trademarks.

For the reasons set forth below, the undersigned will recommend that the district court GRANT Magpul's motion for default judgment and enter default judgment against Tong.

## BACKGROUND

### A.   Procedural Background

Magpul filed its original Complaint on April 3, 2014, alleging that John Does 1-10[1] had conspired to sell counterfeit Magpul products on eBay. Compl. Doc. 1 at 2-3. The Complaint

---

[1] Individuals or business entities unknown to Magpul.

alleged: (Count 1) Federal Trademark Infringement under the Lanham Act, 15 U.S.C. § 1114(1)(a); (Count 2) False Designation of Origin Under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A); (Count 3) California Common Law Unfair Competition and Trademark Infringement; (Count 4) Unfair Business Practices, CAL. BUS. & PROF. CODE § 17200 *et seq*.; and (Count 5) Fraud, CAL. CIV. CODE § 1710. *Id*. at 13-17. On April 16, 2014, the district judge entered a Temporary Restraining Order granting Magpul's request to freeze the assets of John Does 1-10's PayPal accounts and to allow Magpul to serve John Does 1-10 by email. *See* Orders of April 16, 2014. Docs. 27 & 28. The Order freezing John Does 1-10's PayPal accounts also set a preliminary injunction hearing before the district judge for April 28, 2014, with any briefs in support due April 18, 2014. John Does 1-10 failed to file any briefs and failed to attend the hearing, after which the district judge entered a preliminary injunction freezing the assets in the PayPal accounts. *See* Order of April 28, 2014. Doc. 30.

On May 12, 2014, Magpul filed an Amended Complaint naming Tong as a Defendant and setting forth specific factual allegations against him. *See* Amend. Compl., Doc. 46. Tong was served a copy of the Amended Complaint by email. *See* Cert. of Serv. Doc. 49 and Order of July 11, 2014, Doc. 54. Because Tong failed to timely file an answer, Magpul moved for Entry of Default, which was entered by the Clerk of Court on July 14, 2014. *See* Entry of Default, Doc. 57. On August 4, 2014, Magpul filed the instant motion along with a supporting Declaration, Doc. 63-1, and Brief, Doc. 63-2 . On October 7, 2014, the undersigned held a hearing on Magpul's request for monetary damages.

### B.   Factual Background

Upon default, all factual allegations in the complaint are taken as true, except those relating to damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (citing *Geddes v. United Financial Group*, 599 F.2d 557, 560 (9th Cir. 1977)). Accordingly, the court accepts the facts as set forth in the Amended Complaint. Further, because Magpul only seeks

default judgment against Tong under its claims of Federal Trademark Infringement under the Lanham Act, 15 U.S.C. § 1114(1)(a) and § 1125(a)(1)(A), the court will only set forth the facts relevant to those claims.

Magpul has caused several trademarks to be registered on the Principal Register of the U.S. Patent and Trademark Office ("USPTO") in connection with a range of firearm-related products and accessories. Amend. Comp. Doc. 46 at 3. Magpul owns all rights, titles, and interests in these federal trademark registrations. *Id*.

On or about April 29, 2013, Magpul began publicizing the "MBUS Pro" as a new product line that was planned for later market release. *Id*. at 4. Publications contained detailed photos of the MBUS Pros, which included line drawings of the products and a description of their key features. *Id*. Magpul currently has design patent applications pending for the MBUS Pro. *Id*. While publications described that the MBUS Pro would be offered for sale sometime during the late summer of 2013, Magpul did not release the items for sale until around September 3, 2013. *Id*.

Sometime on or before March 28, 2013, Tong began offering various Magpul products for sale through eBay, using the "seller names" of thebuzzybeecentral ("Buzzy Bee") and Arctic_Trader ("Arctic Trader"). *Id*. at 4-5. Between about March 28, 2013 and August 19, 2013, Magpul made seventy-seven complaints to eBay about Defendants' listings of counterfeit Magpul products, through eBay's Verified Rights Owner program ("VeRO"). *Id*. at 5. eBay removed each of Defendants' seventy-seven listings that Magpul reported through the VeRO program. *Id*.

### *The Test Buys*

Magpul set up a series of seven "test buys," wherein a Magpul investigator would purchase items listed on eBay by sellers Arctic Trader and Buzzy Bee. Following purchases from each of those sellers, Magpul received a receipt from PayPal, which indicated that the email address associated with this seller was: sj_group@foxmail.com. *Id*. at 8. In addition, a transaction receipt

from the buyer's bank account revealed that the name associated with the seller was "Tong Zejun." *Id*. Five of the items received through the test buys indicated that they had been shipped by "Toni," located at 2B, Unite (sic) 4, Building 10, Chun Hua, Si Ji Yuan, Ban Tian Longgang, Shenzhen Guangdong, China 518112, with a telephone number of +86-18675570827. *See id*. at 5-13. Two of the items received indicated that they had been shipped from "E.B." at 527 N. Azusa Ave. #383, Covina, CA 91722. *Id*. Magpul performed a Google search which revealed that this address was occupied by "Pak Mail Center," a business that offers mailboxes for rent. *Id*. at 8. Specific facts regarding the test buys are as follows:

On or about August 20, 2013, Tong sold a Magpul investigator a pair of sights that appeared substantially similar to a product sold by Magpul, the "MBUS Pro." Amend. Compl., ¶¶ 16-17. Tong discounted these products by more than 82% off of Magpul's Manufacturer's Suggested Retail Price ("MSRP") for these same products. *Id*. at ¶ 15. The product and its packaging bear Magpul trademarks that are registered with the USPTO, among these: the MBUS word mark (U.S. Reg. No. 3696887), and the Magpul Logo (U.S. Reg. No. 2338725), which had been affixed without Magpul's permission or authority. *Id*. at ¶ 17.

On or about August 26, 2013, Tong sold a Magpul investigator a pair of sights that appeared substantially similar to a product sold by Magpul, the "MBUS Pro." *Id*. at ¶¶ 19-20. Tong discounted these products by more than 82% off of Magpul's MSRP for these same products. *Id*. at ¶ 18. The product and its packaging bear Magpul trademarks that are registered with the USPTO, among these: the MBUS word mark (U.S. Reg. No. 3696887), and the Magpul Logo (U.S. Reg. No. 2338725), which had been affixed without Magpul's permission or authority. *Id*. at ¶ 20.

On or about February 6, 2014, Tong sold a Magpul investigator a product that appeared nearly identical or substantially similar to a product sold by Magpul, the "RSA." Id. at ¶¶ 39-40. The product and its packaging bear Magpul trademarks that are registered with the USPTO,

4

among these: the Magpul word mark (U.S. Reg. No. 3381306), the Magpul Logo (U.S. Reg. No. 2338725), and the RSA word mark (U.S. Reg. No. 3993980), which had been affixed without Magpul's permission or authority. *Id.* at ¶ 40.

On or about February 10, 2014, Tong sold a Magpul investigator a product that appeared nearly identical or substantially similar to a product sold by Magpul, the "MS2 Sling." *Id.* at ¶¶ 21-22. The product and its packaging bear Magpul trademarks that are registered with the USPTO, among these: the Magpul word mark (U.S. Reg. No. 3381306), and the Magpul Logo (U.S. Reg. No. 2338725), which had been affixed without Magpul's permission or authority. *Id.* at ¶ 24.

On or about February 10, 2014, Tong sold a Magpul investigator a product that appeared nearly identical or substantially similar to a product sold by Magpul, the "MBUS" Back Up sights. *Id.* at ¶¶ 25-26. The product and its packaging bear Magpul trademarks that are registered with the USPTO, among these: the Magpul word mark (U.S. Reg. No. 3381306), the Magpul Logo (U.S. Reg. No. 2338725), and the MBUS word mark (U.S. Reg. No. 3696887), which had been affixed without Magpul's permission or authority. *Id.* at ¶ 28.

On or about February 10, 2014, Tong sold a Magpul investigator a product that appeared nearly identical or substantially similar to a product sold by Magpul, the "MBUS Pro" back up sights. *Id.* at ¶¶ 29-30. The product and its packaging bear Magpul trademarks that are registered with the USPTO, among these: the MBUS word mark (U.S. Reg. No. 3696887), and the Magpul Logo (U.S. Reg. No. 2338725), which had been affixed without Magpul's permission or authority. *Id.* at ¶ 32.

On or about February 10, 2014, Tong sold a Magpul investigator a product that appeared nearly identical or substantially similar to a product sold by Magpul, the "MBUS Pro" back up sights. *Id.* at ¶¶ 33-34. The product and its packaging bear Magpul trademarks that are registered with the USPTO, among these: the MBUS word mark (U.S. Reg. No. 3696887), and the Magpul

Logo (U.S. Reg. No. 2338725), which had been affixed without Magpul's permission or authority. *Id*. at ¶ 36.

### *Willful Conduct*

The Amended Complaint also alleges that Tong's conduct was willful and knowing. Specifically, Magpul asserts that Tong took affirmative steps to conceal his true identity by: (1) providing an incomplete return address that does not relate to a specific address on the shipments from China; (2) using a return address in California that relates to a business that offers mailboxes for rent and is not traceable to a specific person; (3) selling counterfeit products through at least two separate eBay seller IDs (Buzzy Bee and Arctic Trader); (4) listing a fictitious phone number on the shipments; and (5) using names such as "Toni" and "E.B." to make it impossible to tie the shipments to a specific person. *Id*. at ¶¶ 12-13, 41-43. Magpul also points to the seventy-seven listings that were removed through eBay's VeRO program in 2013 and Tong's continued misuse of the marks.

## DISCUSSION

### A.     Legal Standards

After entry of default, the court may enter a default judgment. Fed. R. Civ. P. 55(b). The decision to grant or deny a default judgment is within the court's discretion. *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988). The court first must look into its jurisdiction over both the subject matter and the parties. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). The court must also "assess the adequacy of service of process on the party against whom default is requested." *Penpower Tech. Ltd. v. S.P.C. Tech.*, 627 F. Supp. 2d 1083, 1088 (N.D. Cal. 2008) (quotation omitted). Once the court determines that jurisdiction exists and service was sufficient, it may consider the following factors when exercising its discretion to enter a default judgment:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of [the] plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a

6

> dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Moreover, "a default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

**B.    Analysis**

### 1.    *Subject matter and personal jurisdiction*

The Amended Complaint alleges Federal Trademark Infringement under the Lanham Act, 15 U.S.C. § 1114(1)(a) and False Designation of Origin Under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A). Amend. Compl. at 13-14. This court then has original jurisdiction over this matter. *See* 28 U.S.C. § 1331; 28 U.S.C. § 1338(a)(" The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks."); 15 U.S.C. § 1121 ("The district and territorial courts of the United States shall have original jurisdiction . . . of all actions arising under this chapter, without regard to the amount in controversy or to diversity or lack of diversity of the citizenship of the parties.").

The court also finds that it may exercise personal specific jurisdiction over Tong.

> We apply a three-part test to determine whether the exercise of specific jurisdiction over a nonresident defendant is appropriate: (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable.

*Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008) (citation omitted). Tong purposefully availed himself the privilege of utilizing a California address and a business within California for shipping the items he had sold. These claims relate to Tong's activities here in California and the

7

exercise of jurisdiction in this case is reasonable.

### 2. *Service of Process*

Service was adequate to perfect the district court's authority to exercise personal jurisdiction over Tong. Delivering a copy of the summons and complaint to the individual being sued is an adequate means of serving process on that individual. *See* Fed. R. Civ. P. 4(e)(2)(a). The district judge granted Magpul leave to accomplish service of process through email. *See* Amend. Order of April 16, 2014, Doc. 27 (finding that email service of process was "reasonably calculated under all the circumstances to apprise Defendants of the pendency of the action and afford them an opportunity to appear in this matter to respond to the complaint."). *See also Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1017 (9th Cir. 2002) (finding that service of process by email is authorized in cases where it is reasonably calculated to provide notice and an opportunity to respond). The proof of service Magpul filed with the court establishes that Tong was served a copy of the Amended Complaint by email. *See* Cert. of Serv. Doc. 49 and Order of July 11, 2014, Doc. 54.

### 3. *The Eitel Factors*

#### a. __Possibility of Prejudice__

The first *Eitel* factor considers whether Magpul will suffer prejudice if default is not entered. "Potential prejudice to [Magpul] favors granting a default judgment. If [Magpul's] motion for default judgment is not granted, [it] will likely be without other recourse for recovery." *PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).

#### b. __Merits of the Claims and Sufficiency of the Complaint__

The second and third *Eitel* factors address the sufficiency of Magpul's Amended Complaint and the probability of success on the merits of its underlying claims. As stated above, Magpul's seeks default judgment on its claim that Tong willfully committed Federal Trademark Infringement under the Lanham Act, 15 U.S.C. § 1114(1)(a) and False Designation of Origin

8

Under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).  Amend. Compl., Doc. 46 at 13-14.

"Although there are some differences between a claim under § 1114 (trademark infringement) and § 1125(a) (false designation of origin), 'the analysis under the two provisions is oftentimes identical.'"  *Wecosign, Inc., v. IFG Holdings, Inc., et al.*, 845 F. Supp. 2d 1072, 1079 (C.D. Cal. 2002) (quoting *Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1047 n. 8 (9th Cir.1999)).  Therefore, the court jointly analyzes Magpul's trademark infringement and false designation of origin claims.

"To prevail on a claim of trademark infringement under the Lanham Act, 15 U.S.C. § 1114, a party 'must prove: (1) that it has a protectable ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion.'"  *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1144 (9th Cir. 2011) (quoting *Dep't of Parks & Recreation v. Bazaar Del Mundo Inc.*, 448 F.3d 1118, 1124 (9th Cir. 2006)).  As to the first issue, the court finds that because the trademarks have been registered on the Principle Register of the USPTO and Magpul owns the rights, titles, and interests in them, Magpul has established a protectable ownership in the marks.

As to the second factor, "[t]he likelihood of confusion is the central element of trademark infringement, and the issue can be recast as the determination of whether the similarity of the marks is likely to confuse customers about the source of the products."  *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1205 (9th Cir. 2000) (internal quotations omitted).  Here, taking the facts in the Amended Complaint as true, Tong misappropriated Magpul's wordmarks "MBUS," "Magpul," and "RSA," as well Magpul's logos, and affixed them to products that appear substantially similar to products sold by Magpul, and then sold and marketed those products through an online marketplace.  *See* Amend. Compl. Doc. 46 at 16-40.  Accordingly, the court finds that Tong's use of the marks would cause consumer confusion.

9

Further, the court finds that the facts as set forth above, including Tong's repeated use of the marks despite the sales listing removals on eBay, establish that Tong's misuse of the marks was willful.[2] *See also Philip Morris USA, Inc. v. Castworld Products, Inc.*, 219 F.R.D. 494, 500 (C.D. Cal. 2003) (finding trademark infringement willful and deliberate "as Defendants' failure to answer constitutes an admission as to the averments contained in the complaint.").

### c. The Sum of Money at Stake

"The third *Eitel* factor balances the amount of money at stake in relation to the seriousness of the [d]efendant's conduct. This requires that the court assess whether the recovery sought is proportional to the harm caused by defendant's conduct." *Landstar Ranger, Inc. v. Parth Enterprises, Inc.*, 725 F. Supp. 2d 916, 921 (C.D. Cal. 2010) (internal citations omitted). The Amended Complaint lists six specific marks (three logo marks and three word marks) that were infringed and seeks a total of eight million dollars ($8,000,000.00) in damages. Amend. Compl., Doc. 46 at 17-18.

---

[2] Moreover, the court would note that in permanently enjoining PayPal from disbursing assets held in accounts associated with Tong, the district judge held that:

> Magpul is likely to prevail in its lawsuit against Defendants for trademark counterfeiting (15 U.S.C. § 1114) because there is sufficient evidence to support findings that: Magpul has a protectable ownership interest in various trademarks that are registered with the U.S. Patent and Trademark Office ("Magpul's Registered Marks"); Defendants have repeatedly sold products that appear identical, or substantially similar to products that are sold by Magpul, which also had Magpul's Registered Marks affixed to them; these products were not manufactured by Magpul, nor by its authority; Defendants' unauthorized use of Magpul's Registered Marks are likely to cause confusion or deception amongst the consuming public as to the products' origins, and; that these products are "counterfeit," as that term is defined at 15 U.S.C. § 1116(d)(B)(i).
>
> Magpul is likely to establish that Defendants' trademark counterfeiting was done willfully in that: Defendants were provided notice on at least seventy-seven occasions that they were selling products that infringed upon Magpul's trademarks, but continued to sell them anyway; Defendants have received numerous notices from its customers who complained through eBay that the products sold by Defendants were inferior, or counterfeit, but continued to sell these products, and; the price at which Defendants were selling their products was so far below the market price for genuine products that they must have known that the products were derived through an illegal source.

Order of April 28, 2014, Doc. 39 at 2.

Rather than seek actual damages, Magpul has elected to seek statutory damages under 15 USC 1117(c). Because the court finds that Tong's use of the counterfeit mark was willful, the statutory maximum of damages is two million dollars ($2,000,000.00) per mark, for a total maximum damages allowable of twelve million dollars. In its Motion for Default Judgment, Magpul requests the total sum of one hundred twenty thousand dollars ($120,000) in statutory damages. Pl.'s Mot. Doc. 63. Magpul further explains in its briefing that it seeks "$20,000 per infringed mark for each type of good sold . . . which is only 1 percent of the maximum statutory damages that could otherwise be awarded." Pl.'s Br. Doc. 63-2 at 17. At the hearing held on October 7, 2014, Magpul further explained that the amount requested was proportional to the damage inflicted, within the statutory range of innocent infringement despite Tong's willful use of the marks, and that the amount would serve as a deterrence.

Considering the willful nature of Tong's misuses of Magpul's mark, the number of times Tong used the marks to make and attempt to make sales through eBay, the statutory maximum, the original amount of damages sought in the Complaint, and the reduced amount now sought in the present Motion compared to the statutory maximums, the court finds that this factor weighs in favor of default.

### d. **Possibility of Dispute Concerning Material Facts**

The fifth *Eitel* factor considers the possibility of dispute as to any material facts in the case. As stated above, upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages. Moreover, Tong has failed to file an answer or otherwise dispute the facts set forth in the Amended Complaint. Accordingly, this factor weighs in favor of default judgment

### e. **Whether Default was Due to Excusable Neglect**

Tong was served by email to the address associated with his PayPal account, which was linked to his bank account. The district judge determined that this method of service was

appropriate and, as described above, Magpul perfected this service. This *Eitel* factor also weighs in favor of default judgment.

#### f. Policy for Deciding on the Merits

The Federal Rules favor a decision on the merits whenever possible, *Eitel*, 782 F.2d at 1472, and thus this factor by definition weighs against granting default judgment. However, "[w]hen a defendant like [Tong] fails to defend an action by submitting an answer to plaintiff's complaint, a judgment on the merits is impractical, if not impossible." *Truong Giang Corp. v. Twinstar Tea Corp.*, 06-03594 JSW, 2007 WL 1545173 (N.D. Cal. May 29, 2007). Ultimately, the preference to decide the cases on the merits does not preclude a court from granting default judgment. *See, e.g., id.*

### C. Damages & Injunctive Relief

#### 1. *Statutory Damages*

Because the court has found that Tong's misuse of Magpul's marks was willful, Magpul may seek damages of "not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(2). Magpul has shown six trademark violations and seeks twenty thousand dollars per violation, for a total of one hundred twenty thousand dollars ($120,000.00). "If a plaintiff elects to recover statutory damages, the court has wide discretion in determining the amount of statutory damages to be awarded." *Ploom, Inc. v. Iploom, LLC*, 2014 WL 1942218, at *5 (N.D. Cal. May 12, 2014). "The Court should, however, award damages in trademark infringement cases that are sufficient to deter future infringement." *Yelp Inc. v. Catron*, 2014 WL 4966706 (N.D. Cal. Oct. 1, 2014). Considering the nature of Tongs actions, his willful engagement in a conspiracy to profit from Magpul's marks, deceive his victims, and evade detection, the number of times he misused the marks, and the need to deter his and his unknown co-conspirators' future infringement, the court finds that an award of one hundred twenty thousand dollars is appropriate.

12

### 2. *Injunctive Relief*

The Lanham Act gives the court "power to grant injunctions according to the rules of equity and upon such terms as the court may deem reasonable, to prevent the violation" of a trademark holder's rights. 15 U.S.C. § 1116(a). Magpul seeks a permanent injunction that:

> forever enjoins Tong, and those acting at his direction, from: (1) using Magpul's trademarks in connection with the sale of any unauthorized goods; (2) infringing upon the Magpul Marks; (3) unfairly competing with Magpul; (4) falsely representing himself as being connected with Magpul; (5) using any reproduction, counterfeit, copy or colorable imitation of Magpul's trademarks in connection with publicity, promotion, or sale of goods, and; (6) affixing, applying, annexing, or using in connection with the sale of any goods, a false description or representation that describe or represent such goods as being those of Magpul.

Pl.'s Br., Doc. 63-2 at 14.

"Injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988). Thus, the court finds that a permanent injunction is appropriate in this case.

## CONCLUSION

For the foregoing reasons, the undersigned recommends that Plaintiffs' Motion For Default Judgment be granted, and that Judgment be entered for Plaintiff and against Tong as follows:

Tong, and those acting at his direction, be forever enjoined from: (1) using Magpul's trademarks in connection with the sale of any unauthorized goods; (2) infringing upon the Magpul Marks; (3) unfairly competing with Magpul; (4) falsely representing themselves as being connected with Magpul; (5) using any reproduction, counterfeit, copy or colorable imitation of Magpul's trademarks in connection with publicity, promotion, or sale of goods, and; (6) affixing, applying, annexing, or using in connection with the sale of any goods, a false description or representation that describe or represent such goods as being those of Magpul; and $120,000.00 in monetary damages.

After the court enters default judgment Magpul will seek a writ of execution against the funds frozen in Tong's PayPal account. In order for the preliminary injunction that froze the

13

1  money in Tong's PayPal accounts to remain in effect throughout that process, Magpul requests
2  that this matter remain open on the court's docket. The undersigned recommends that the district
3  judge grant this request and keep the matter open to allow Magpul to seek the writ of execution
4  against the frozen funds and require Magpul to periodically file status updates with the court.

Plaintiff is ordered to serve a copy of this Report and Recommendation on Tong immediately, and to file a proof of service with the court.

Any party may file objections to this report and recommendation with the district court within fourteen (14) days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B) & (C); Fed. R. Civ. Proc. 72(b); Civil L.R. 72-3. Failure to file objections within the specified time may waive the right to appeal the district court's order.

**IT IS SO ORDERED**.

Dated: October 28, 2014

_____
NANDOR J. VADAS
United States Magistrate Judge